# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | : | |
| IRA ALSTON, | : | |
|        Plaintiff, | : | Case No. 3:15-cv-669 (CSH) |
| | : | |
|    v. | : | |
| | : | |
| CORRECTIONAL OFFICER DANIELS, | : | |
| CORRECTIONAL OFFICER | : | |
| RUTKOWSKI, CORRECTIONAL | : | |
| OFFICER HERNANDEZ, | : | |
| CORRECTIONAL OFFICER JOHN | : | |
| DOE #1, CORRECTIONAL OFFICER | : | |
| JOHN DOE #2, LIEUTENANT DAIRE, | : | |
| LIEUTENANT ANYNA, CAPTAIN | : | |
| JASON CAHILL, | : | NOVEMBER 17, 2015 |
|        Defendants. | : | |
| | : | |

## ORDER

**HAIGHT, Senior District Judge:**

## I.   INTRODUCTION

Plaintiff, Ira Alston, currently incarcerated at the Northern Correctional Institution ("NCI") in Somers, Connecticut, has filed a *pro se* complaint under 42 U.S.C. § 1983 against eight prison officials.[1]   The complaint was electronically filed from the prison on May 4, 2015, and is based on an incident which occurred in the prison in April of 2012.  On June 2, 2015, the Court ordered the plaintiff to show cause why this case should not be dismissed as time-barred because the limitations period for filing an action under § 1983 is three years, and plaintiff's

---

[1]   Defendants include five correctional officers (Daniels, Rutkowski, Hernandez, and John Does #1 and #2), two lieutenants (Daire and Anyna), and one captain (Cahill).  Each defendant was employed at NCI on the date of the alleged incident.

complaint had been filed more than three years following the April 2012 incident.[2]

In response, Alston explained that he had not completed exhausting his administrative remedies until July 17, 2012. *See* Doc. 6 (Plaintiff's Response, dated 6/7/2015) (attesting that plaintiff exhausted his "state administrative remedies within the Connecticut's DOC [Department of Correction] System," commencing on April 24, 2012, and ending on July 17, 2012).  The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *See Giano v. Goord*, 380 F.3d 670, 675 (2d Cir. 2004).   In recognition of this exhaustion requirement, the Second Circuit has held that the applicable statute of limitations in § 1983 prisoner suits must be "tolled while a prisoner completes the mandatory exhaustion process." *Gonzalez v. Hasty*, 651 F.3d 318, 323-24 (2d Cir. 2011). "[T]he date on which [the plaintiff] first raised his administrative claims demarcates the commencement of the period of time during which he was actively exhausting those claims." *Id.* at 324.  *See also Dorlette v. Butkiewicus*, No. 11-CV-1461 (TLM), 2013 WL 4760943, at *7 (D.Conn. Sept. 4, 2013).  Accordingly, accepting Alston's factual assertions regarding the dates during which he exhausted his administrative remedies, his complaint, at least with respect to his

---

[2]  In Connecticut, a plaintiff must bring his § 1983 claim within three years of the date his claim accrues.  *Dorlette v. Butkiewicus*, No. 11-CV-1461 (TLM), 2013 WL 4760943, at *7 (D. Conn. Sept. 4, 2013) (citing *Walker v. Jastremski*, 430 F.3d 560, 562 (2d Cir. 2005) and *Lounsbury v. Jeffries*, 25 F.3d 131, 134 (2d Cir.1994) (holding that three-year limitations period set out in Conn. Gen. Stat. § 52–577 governs the statute of limitations period for § 1983 claims in Connecticut)).

federal claims regarding prison conditions, was timely filed.[3]

In his complaint, Alston asserts the following claims against all defendants:  (1) a § 1983 action for violation of his rights under the Eighth and Fourteenth Amendments to the Constitution (*e.g., inter alia*, cruel and unusual punishment and deprivation of liberty) because he was allegedly subjected to "disbursements of [a] chemical agent" into his cell and "place[d] on in-cell restraint status"); and (2) intentional infliction of emotional distress in violation of Connecticut state law. *See* Doc. 1, ¶¶ 54-59, 62. As to defendants Anya, Rutkowski, Hernandez, John Does #1 and #2, and Cahill, Alston also brings a federal claim for "an atypical and significant hardship in relation to the ordinary incidents of prison life" (lack of due process with respect to in-cell restraint status).  *Id.*, ¶ 60.  Lastly, as to all defendants except Daniels, plaintiff brings a Connecticut tort claim for "assault and battery."  *Id.*, ¶¶ 60-61.   Plaintiff requests a jury trial and prays for compensatory damages, nominal damages, punitive damages, and attorney's fees. *Id.,* ¶ 63.

Under 28 U.S.C. § 1915A, the  court must review a prisoner's civil complaint and dismiss any portion that "(1) is frivolous,  malicious, or  fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *See* 28 U.S.C.  § 1915A(b)(1)-(2).   Although detailed allegations are not required, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S 544, 570 (2007)). The alleged facts must be sufficient to afford the defendants fair notice of

---

[3]  Plaintiff signed his complaint on April 13, 2015 and it was electronically filed on May 4, 2015.   Under the prisoner e-filing program, prison officials date-stamp and email the complaint to court on the same day the prisoner gives them the complaint for filing.  But for the tolling period of almost 3 months (from April 24 to July 17 of 2012), plaintiff's complaint, filed on May 4, 2015, would have been filed approximately one month too late.

the claims and the grounds upon which the claims are based. *Twombly*, 550 U.S. at 555-56. The complaint must provide "more than the unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

"A document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Boykin v. KeyCorp.*, 521 F.3d 202, 214 (2d Cir. 2008) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). *See also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008) (where the plaintiff proceeds *pro se*, a court is "obliged to construe his pleadings liberally") (quoting *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)). In reviewing a *pro se* complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). *See also McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (same). Despite being subject to liberal interpretation, a *pro se* plaintiff's complaint still must "state a claim to relief that is plausible on its face." *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678).

## II.  FACTUAL ALLEGATIONS

On April 5, 2012, the plaintiff shared a cell with inmate Tye Thomas, who on that date "signed up for recreation while the plaintiff declined." Doc. 1, ¶¶ 12-14. At approximately 2:30 p.m., defendant Correctional Officer Daniels was touring the housing unit and noticed that Alston's and Thomas's cell door  window  was covered with a towel, obstructing the view into the cell. *Id.*, ¶ 15. In accordance with prison rules, Defendant Daniels asked inmate Thomas to

uncover the window, but Thomas refused and told Daniels that the window was covered because he "wanted his recreation" time.  *Id.,* ¶¶ 16-17.   Thomas then requested to see a shift lieutenant to "address the issue regarding his recreation."  *Id.*, ¶ 18.  Daniels told Thomas that if she had to call a shift lieutenant, "he was most definitely not going to get his recreation" that day.  *Id.*, ¶ 19.

Inmate Thomas and Officer Daniels then began a verbal disagreement, using "derogatory," "insult[ing]" language.  *Id.,* ¶ 20.  Daniels asked Alston to uncover the window.  *Id.*, ¶ 22.  He declined; and in response, Daniels threatened to place him on "in-cell restraint status" if he did not comply.  *Id*., ¶ 22.  Both Alston and Thomas told Daniels that Alston was not involved in covering the window.  *Id*., ¶¶ 23-24.

Daniels then attempted to summon a prison shift supervisor. *Id.*, ¶ 26.  Lieutenants Daire and Anyna reported to the unit in response to the summons. *Id.*, ¶ 27.   Daniels told them that the cell window was covered and that both Alston and Thomas were "unresponsive" to the requests to uncover the window.  *Id.*, ¶ 28.  Alston and Thomas repeated that Alston was not involved in covering the cell door window.  *Id.*, ¶ 29.   At this time Correctional Officers Hernandez, Rutkowski and John Does #1 and #2 arrived and were present at the cell.  *Id.*, ¶ 31.

When Thomas continued to refuse to uncover the window, Daire ordered Hernandez to retrieve a camera to record the "cell extraction" of the prisoners.  *Id.*, ¶ 32.  Lieutenants Daire and Anyna then deployed several bursts of a chemical agent into the cell, causing Alston to gag, cough, sneeze and vomit. *Id.*, ¶¶ 35-36.   In response to the gas, Thomas finally removed the covering from the cell window.  *Id.*, ¶ 38.  Plaintiff Alston was handcuffed, shackled with a connecting tether chain and escorted to the medical unit where his eyes, which were allegedly burning from the chemical agent, were rinsed.  *Id.*, ¶¶ 37, 39-40.  Alston was then placed on "in-cell restraint status" for twenty-four hours.  *Id.*, ¶ 41.   During this time, Alston's restraints were

5

allegedly bound in such a manner that he had to remain bent at the waist. *Id.*, ¶ 42.   His restraints also allegedly caused cuts, swelling, and bruising on his wrists and ankles.  *Id.*, ¶ 43. Plaintiff allegedly continued to suffer from the effects of the chemical agent in that he was not permitted to shower while on in-cell restraint status. *Id.*, ¶ 45.

On April 5, 2012, Lieutenant Daire and Officer Daniels issued a misconduct report regarding Alston, charging him with interfering with prison safety and security.  *Id.*, ¶ 48.  On May 9, 2012, at a hearing on Alston's alleged misconduct, a disciplinary report hearing officer dismissed the charge. *Id.*, ¶ 49.

## III.  ANALYSIS

### A.  Federal Claims

#### 1.  Excessive Force

The Court will first analyze the plaintiff's federal claims to determine whether they may go forward.  If any federal claim survives, the Court possesses "federal question" subject matter jurisdiction, 28 U.S.C. § 1331, and will examine whether the supplemental state claims may proceed.[4]

As to defendant Correctional Officers Daniels, Rutkowski, Hernandez, and John Does #1 and #2, Lieutenants Daire and Anyna, and Captain Cahill,  plaintiff contends that on April 5, 2012, these defendants violated his Eighth and Fourteenth Amendment rights under the United States Constitution when they sprayed his cell with a chemical agent and placed him on in-cell

_____

[4]    Plaintiff bases subject matter jurisdiction over this action on "federal question" jurisdiction, 28 U.S.C. § 1331, which provides that "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." In any event, plaintiff presents no facts to demonstrate the existence of the alternative basis for jurisdiction, "diversity of citizenship" pursuant to 28 U.S.C. § 1332(a).

restraint status with tight wrist shackles and leg irons.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishment" including the "unnecessary and wanton infliction of pain." *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981). It is well-settled that the Eighth Amendment is the "primary source of substantive protection *to convicted prisoners* . . . , where the deliberate use of force is challenged as excessive and unjustified." *Whitley v. Albers*, 475 U.S. 312, 327 (1986) (emphasis added).

On the other hand, the Due Process Clause of the Fourteenth Amendment protects *pretrial detainees*, entitling them to be free from excessive force. *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999). Because plaintiff's excessive force claim arose *after* he was convicted, it must be analyzed under the Eighth Amendment. *Jeanty v. Cnty. of Orange*, 379 F. Supp. 2d 533, 539 (S.D.N.Y. 2005). *See also  Berry v. Muskogee*, 900 F.2d 1489, 1493 (10th Cir. 1990) ("The critical juncture is conviction, . . . at which point the state acquires the power to punish and the Eighth Amendment is implicated."); *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979) (Eighth Amendment scrutiny is appropriate once the "State has complied with the constitutional guarantees traditionally associated with criminal prosecutions" and "has secured a formal adjudication of guilt"). Accordingly, plaintiff's excessive force claim under the Fourteenth Amendment will be dismissed. *See Graham v. Connor,* 490 U.S. 386, 395 n.10 (1989) ("Any protection that 'substantive due process' affords convicted prisoners against excessive force is . . . at best redundant of that provided by the Eighth Amendment."); *Jeanty*, 379 F.Supp.2d at 539 (because "plaintiff pled guilty seven months prior to the alleged excessive force incident," Eighth Amendment was implicated and Fourth and Fourteenth Amendment claims were dismissed).

In the Second Circuit, a prison guard's use of a chemical agent and/or extremely tight

shackles on an inmate may, under certain circumstances, constitute unnecessary and wanton infliction of pain in violation of the Eighth Amendment. *See, e.g., Tracy v. Freshwater*, 623 F.3d 90, 98 (2d Cir. 2010) (concluding that "a reasonable juror could find that the use of pepper spray deployed mere inches away from the face of a defendant already in handcuffs and offering no further active resistance constituted an unreasonable use of force"); *Davidson v. Flynn*, 32 F.3d 27, 30 (2d Cir. 1994) (holding material questions of fact remained with respect to excessive use of force where plaintiff was shackled so tightly as to cause severe pain and permanent injury).

"Although not 'every malevolent touch by a prison guard gives rise to a federal cause of action,' the Eighth Amendment is offended by conduct that is 'repugnant to the conscience of mankind.'" *Crawford v. Cuomo,* 796 F.3d 252, 256 (2d Cir. 2015) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992)). "Actions are repugnant to the conscience of mankind if they are 'incompatible with evolving standards of decency' or involve 'the unnecessary and wanton infliction of pain.'" *Crawford*, 796 F.3d at 256 (quoting *Hudson*, 503 U.S. at 9-10). *See also Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) ("Although prison discipline may require that inmates endure relatively greater physical contact, the Eighth Amendment is nonetheless violated if the offending conduct reflects an unnecessary and wanton infliction of pain.") (citation and internal quotation marks omitted).[5]

As to prison guards, it is generally accepted that "[u]njustified striking, beating, or

---

[5]   In *Williams*, the Sixth Circuit held that a *pro se* petitioner's allegations were sufficient to state a § 1983 claim for violation of the Eighth Amendment where the "[p]etitioner allege[d] that, when instructed to 'pack up,' he inquired, 'What for, sir?,' at which point an 'assault team' entered the cell and used a chemical agent on him." 631 F.3d at 384. The Sixth Circuit explained that "[t]hese facts, if true, may permit a finding that the use and/or amount of force was unnecessary, which may suggest that [the prison guards'] actions were not taken in good faith and were perhaps motivated by the malicious purpose of causing harm." *Id.*

infliction of bodily harm without cause will give rise to liability for violation of the civil rights laws." 60 Am. Jur. 2d Penal and Correctional Institutions § 173 (2d ed. updated August 2015) (citing *King v. Blankenship*, 636 F.2d 70, 72 (4th Cir. 1980)).  "[T]he core judicial inquiry is . . . whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson,* 503 U.S. at 7.

In the case at bar, plaintiff has alleged that although he informed Lieutenants Anyna and Daire that he had no involvement in covering the cell window, they "repeatedly released burs[ts] of chemical agent into the cell."  Doc. 1, ¶ 35.  In addition, plaintiff claims that he was unnecessarily "placed in handcuffs through the cell door trap enclosure" and then "placed in leg irons with a tether chain between the leg irons and handcuffs." *Id.*, ¶ 39.  The handcuffs and leg irons were allegedly bound in such a way that plaintiff had to "ben[d] over at the waist;" and the restraints were allegedly so tight that they caused "cuts, sw[ellings], [and] bruises to his wrists and ankles." *Id.*, ¶¶ 42, 43.  Plaintiff alleges that he was forced to remain in these restraints and given no opportunity to shower so that his skin continued to burn from the chemicals "throughout the afternoon, evening, and night." *Id.*, ¶¶ 44-45.  Under these circumstances, at the screening stage mandated by §1915A, the complaint will proceed on the § 1983 claim pursuant to the Eighth Amendment.  Plaintiff has alleged facts sufficient to support the contention that the prison guards acted "with a culpable state of mind" and the conduct alleged was "objectively harmful" or "sufficiently serious" so that it may have reached constitutional dimensions." *Crawford*, 796 F.3d at 256 (citation and internal quotation marks omitted).[6]

---

[6]   In particular, plaintiff alleges that "[a]t all times during the above[-]described incident all defendants knew plaintiff was not involved" in covering the cell window,  Doc. 1, ¶ 47; yet they sprayed him with chemicals and shackled him in excessively tight handcuffs and leg irons for 24 hours,  *id.*, ¶¶ 35-36, 43-44.

### 2. __Atypical and Significant Hardship__

Plaintiff also argues that his placement on "in-cell restraint status" without cause subjected him to an "atypical and significant hardship," constituting a due process violation.  In *Sandin v. Conner*, 515 U.S. 472 (1995), the  United States Supreme Court explicitly held that "disciplinary confinement does not deprive an inmate of a liberty interest unless the confinement imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Miller v. Selsky*, 111 F.3d 7, 8 (2d Cir. 1997) (quoting *Sandin*, 515 U.S. at 486). In *Sandin*, the prisoner  brought a § 1983 action against several prison officials alleging that they had violated his constitutional right to procedural due process by sentencing him to disciplinary segregation without permitting him to call certain witnesses.  515 U.S. at 476.  Given the prisoner's indeterminate sentence of 30 years to life, his confinement in disciplinary segregation for 30 days "did not exceed similar, but totally discretionary confinement in either duration or degree of restriction." *Id.* at 486.  The Supreme Court concluded that such confinement did not constitute an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life" inasmuch as "[t]he regime to which [the prisoner] was subjected . . . was within the range of confinement to be normally expected for one serving an indeterminate term of 30 years to life." *Id*., at 484, 486-87.[7]

Interpreting *Sandin*, the Second Circuit has held that "[a] prisoner's liberty interest is

---

[7]  In *Sandin*, the Supreme Court noted that in some cases, a restraint might be so extreme as to implicate rights arising directly from the Due Process Clause itself. 515 U.S. at 483-84. Moreover, states may create liberty interests protected by the Due Process Clause where the freedom from restraint imposed an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 484.

implicated by prison discipline, such as SHU [Special Housing Unit] confinement, only if the discipline 'imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (quoting *Sandin,* 515 U.S. at  484); *see also  Frazier v. Coughlin*, 81 F.3d 313, 317 (2d Cir.1996) (*per curiam*).  Moreover, the Second Circuit "read[s] *Sandin* to require that [the court] look to actual punishment in making this determination."  *Palmer*, 364 F.3d at 64 (citing *Scott v. Albury*, 156 F.3d 283, 287 (2d Cir. 1998)); *see also Brooks v. DiFasi*, 112 F.3d 46, 49 (2d Cir. 1997) (mandating that "in order to determine whether a prisoner has a liberty interest in avoiding disciplinary confinement, a court must examine the specific circumstances of the punishment.").

Factors relevant to determining whether the plaintiff endured "an atypical and significant hardship" include "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions" and "the duration of the disciplinary segregation imposed compared to discretionary confinement." *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir.1998). "Both the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." *Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir.1999) (citation omitted).

Applying the Second Circuit's fact-determinative approach to the case at bar, the Court examines whether the alleged changes in plaintiff's confinement – placing him on 24 hours of in-cell restraint status -- "are within normal limits or range of custody which conviction has authorized the State to impose," or "whether the restraints or conditions of confinement exceed the sentence in an unexpected manner." *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998) (internal citations and ellipses omitted).  The Court will thus consider both the duration and terms of plaintiff's imprisonment in the present record.

11

As to the duration of plaintiff's prison sentence vis-à-vis the alleged 24-hour in-cell restraint, the Court takes judicial notice that on July 3, 2002, Alston, was convicted after a jury trial of manslaughter in the first degree with a firearm in violation of Conn. Gen. Stat.§ 53a-55a, and of carrying a pistol without a permit in violation of Conn. Gen. Stat. § 29-35(a); and he was sentenced to a total effective term of thirty-five years of imprisonment.  Alston was thereafter convicted on a plea of guilty of possession of a weapon or dangerous instrument in a correctional institution in violation of Conn. Gen. Stat. § 53a-174a.  As to this second charge, he received an additional sentence of one year.[8]   In sum, Alston received a total maximum prison sentence of 36 years for his offenses with a maximum release date of December 13, 2035.[9]

With respect to his prisoner status and housing, plaintiff is incarcerated as a "maximum security inmate" housed in a maximum security correctional facility. It is a matter of public record that "[t]he Northern Correctional Institution [NCI] is a level five, maximum security institution . . . [which] is designated to manage those inmates who have demonstrated a serious inability to adjust to confinement posing a threat to the safety and security of the community, staff and other inmates, are sentenced to death, or posses [sic] a high bond." *See* http://www.ct.gov/DOC/cwp.

Alston is admittedly "assigned to the Security Risk Group Safety Threat Member

---

[8]  On June 30, 2008, while Alston was an incarcerated prisoner at NCI, he was found to possess an instrument consisting of a pen with an attached razor blade. The instrument was found on Alston's person, concealed in his boxer shorts.  *See State of Connecticut v. Alston*, 141 Conn.App. 719, 721 (2013).

[9]  *See*  http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=275666  (Conn. Dep't of Corr. Info.).

[SRGSTM] program within the 2 East Housing Unit " of NCI.  Doc. 1, ¶ 12.  On April 5, 2012, in refusing to follow the instructions of Lieutenants Anyna and Daire to remove the towel from his cell window, Alston was non-compliant with the lieutenants' instructions and the prison's rules.  In such circumstances, where, for example, an inmate has "a proven track record of violent behavior," courts have recognized that the use of mechanical restraints may be "reasonably related to a valid penological interest – to wit, the safety and security of correctional personnel and inmates."  *Dabney v. McGinnis*, No. 97-CV-489A, 2006 WL 1285625, at *5 (W.D.N.Y. May 9, 2006) (ellipsis omitted).  *See also Caballero v. Lantz*, No. 3:05–CV–140 (CFD), 2008 WL 638397, at *3 (D.Conn. Mar. 5, 2008) (noting that "[t]he use of in-cell restraints in prisons is not prohibited by the Eighth Amendment and is certainly justified under many circumstances").

Furthermore, when transporting prisoners from their cells to other locations (*e.g.,* for medical assistance) or while attempting to obtain a disruptive inmate's compliance with lawful direction, mechanical restraints are often employed in the interest of safety.  *See, e.g.*, *Allah v. Goord*, 405 F.Supp.2d 265, 267 (S.D.N.Y. 2005) (finding no due process violation in use of mechanical restraints on inmate during transportation to medical appointment); *LeMaire v. Maass*, 12 F.3d 1444, 1460 (9th Cir. 1993) ("The use of in-cell restraints to control [inmates'] behavior and maintain security does not violate the Eighth Amendment**.");** *Williams v. Burton*, 943 F.2d 1572, 1575 (11th Cir.1991) (placement of disruptive inmate in four-point restraints with adhesive tape covering his mouth was "both prudent and proper" and did not violate the Constitution), *cert. denied*, 505 U.S. 1208 (1992).

Plaintiff's "in-cell restraint" status, lasting at most one full day, was brief in comparison to restraint or confinement found in "atypical and significant hardship" cases.  Moreover,

Alston's restraint immediately followed the disruptive incident in his cell regarding the towel. This Court finds no precedent holding that a one-day restriction following an alleged infraction amounts to a constitutional violation of an inmate's liberty interests.[10] Furthermore, accepting plaintiff's allegations as true, finding that he was bound with both handcuffs and leg irons, causing him discomfort (cuts, swelling, and bruising of his wrists and ankles), "[c]onfinement on in-cell restraint status or in four-point restraints does not [in and of itself] rise to the level of a substantive due process violation."[11]  *Alston v. Butkiewicus*, No. 3:09-CV-207 (CSH), 2012 WL 6093887, at *12 (D. Conn. Dec. 7, 2012) (citation omitted).  *See also, e.g.*, *Grinter v. Knight*,

---

[10]  With respect to duration, the Second Circuit has explicitly avoided "a bright line rule" that a certain period of Special Housing Unit ("SHU") confinement automatically fails to implicate due process rights. *Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000).  *See also Colon v. Howard*, 215 F.3d 227, 234 (2d Cir. 2000) (noting Second Circuit's decision "not to proceed with a bright-line approach").   However, Second Circuit "cases establish the following guidelines for use by district courts in determining whether a prisoner's liberty interest was infringed":

> Where the plaintiff was confined for an intermediate duration -- between 101 and 305 days -- "development of a detailed record" of the conditions of the confinement relative to ordinary prison conditions is required. We have characterized segregative sentences of 125-288 days as relatively long, and thus necessitating specific articulation of . . . factual findings before the district court could properly term the confinement atypical or insignificant. In those situations, a district court must "make a fact-intensive inquiry," examining "the actual circumstances of SHU confinement" in the case before it without relying on its familiarity with SHU conditions in previous cases.

*Palmer*, 364 F.3d at 64-65 (citations, internal quotation marks, and brackets omitted).  In the absence of a detailed factual record, the Second Circuit "ha[s] affirmed dismissal of due process claims only in cases where the period of time spent in  SHU was exceedingly short  -- *less than the 30 days* that the *Sandin* plaintiff spent in SHU --  and there was no indication that the plaintiff endured unusual SHU conditions."  *Id.* at 65-66 (emphasis added).

[11]  The Court further notes that Alston makes no allegations regarding any permanent or long-term injuries resulting from the use of the restraints.

532 F.3d 567, 574 (6th Cir. 2008) (prisoner has no liberty interest in avoiding confinement (shackled to bed in four-point restraints, "sustain[ing] cuts and bleeding") for four hours without a nurse present following alleged disruptive incident); *Bruscino v. Carlson*, 854 F.2d 162, 166 (7th Cir.1988) (holding that handcuffs, shackles and four-point restraints are "reasonable measures" to maintain order when dealing with violent inmates), *cert. denied*, 491 U.S. 907 (1989); *Parks v. Williams*, 157 F. App'x. 5, 6 (9th Cir. 2005) (noting that prison security measures taken for the protection of prison officials and the inmate population are constitutional if applied in good faith and not used maliciously).

Restraints are "expected adverse consequences of confinement" and thus "not an 'atypical and significant hardship' in prison life." *Grinter*, 532 F.3d at 574 (citing *Sandin*, 515 U.S. at 484).[12]  *See also Allah*, 405 F.Supp.2d at 277 (no liberty interest violated by mechanical restraint of inmate during transportation to hospital for medical appointment in unsafe van because "neither the degree nor duration of this restraint appear to be significant").

"The Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed."  *Sandin*, 515 U.S. at 480 (citation and internal quotation marks omitted). "Discipline by prison officials in response to a wide range of misconduct falls within the expected perimeters of the sentence imposed by a court of law." *Id.*

---

[12]   As the Sixth Circuit noted in *Grinter*:

> The use of the restraints and the absence of a nurse pose a lesser hardship than the thirty-day assignment to solitary confinement in *Sandin* that the Court held did not infringe a liberty interest and are significantly less burdensome than the assignment to super-maximum security prison which was found not to infringe any liberty interest in *Wilkinson* [*v. Austin*, 545 U.S. 209 (2005).]

532 F.3d at 574.

at 485. "[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson*, 545 U.S. at 221 (citation omitted). Moreover, "[g]enerally, correction officers, in light of their experience with prisoners, are in a position to judge whether or not restraint of a prisoner is necessary to maintain or restore discipline, and how much restraint is necessary." *Eng v. Coughlin*, 684 F.Supp. 56, 62 (S.D.N.Y. 1988).

In the case at bar, Alston states in his Complaint that the incident in his cell began around 2:30 p.m.  Doc. 1, ¶ 14.  He later states that he remained in his restraints some time following the incident "throughout the [rest of the] afternoon, evening, and night."  *Id.*, ¶ 45 (describing his inability to shower during those hours).  Accordingly, by his own description, he was likely restrained for less than a day.  Pursuant to the Supreme Court's holding in *Sandin* and the particular circumstances of this case  --  a non-compliant prisoner who is a member of a high-risk security group and serving a lengthy prison sentence  --  confinement on "in-cell restraint status" for up to one day, following a disruptive incident of noncompliance in his cell, did not impose an "atypical and significant hardship. . . in relation to the ordinary incidents of prison life."[13]

---

[13]    *See, e.g. Goodwin v. Hungerford*, No. 12-CV-00362 (AF), 2014 WL 1219050, at *4 (W.D.N.Y. Mar. 24, 2014) ("Plaintiff [who was placed in mechanical restraints after corrections officer accused him of 'threatening to throw feces'] cannot state a due process violation based on the application of mechanical restraints as Plaintiff had no liberty interest in remaining free of such restraints so as to trigger due process protections"), *report and recommendation adopted*, 2015 WL 1431675 (W.D.N.Y. Mar. 27, 2015); *see also Sealey v. Giltner*, 197 F.3d 578, 589-90 (2d Cir. 1999) (finding that 101-day confinement in restrictive housing, while "doubtless unpleasant," did not constitute an "atypical and significant hardship in relation to the ordinary incidents of prison life").

The Second Circuit has held that where the conditions and the duration of confinement are not reasonably in dispute, "the ultimate issue of atypicality is one of law." *Sealey v. Giltner*, 197 F.3d 578, 585 (2d Cir. 1999). *See also, e.g., Brown v. Coughlin*, No. 93-CV-0633E(H), 1995 WL 643349, at *3 (W.D.N.Y. Oct. 13, 1995) ("this Court concludes that, as a matter of law, the plaintiff does not have a liberty interest in being unencumbered by mechanical restraints during his exercise period" due to prior disciplinary infractions).

Although plaintiff has stated a potential claim for violation of the Eighth Amendment, his allegations are insufficient to state a due process claim for an "atypical and significant hardship" as a matter of law. As described above, the brief duration of plaintiff's restraint and the use of four-point restraints, handcuffs and leg irons, especially following a disruptive incident, do not give rise to a finding of an "atypical and significant hardship" to a high-risk maximum security prisoner serving a 36-year sentence.[14]

## B.  **State Law Claims**

### 1.  **Assault and Battery**

Next, the Court reviews plaintiff's state law claims:  assault and battery and intentional infliction of emotional distress.  With respect to common law "assault and battery," under Connecticut law, "assault" occurs when one intends to place another in apprehension of bodily

---

[14]  "If the force [exerted by prison guards] was maliciously or sadistically inflicted, significant injury is not required for an Eighth Amendment violation to be found." *Molina v. New York*, 697 F.Supp.2d 276, 285 (N.D.N.Y. 2010) (citing *Hudson*, 503 U.S. at 8).  Otherwise, "various kinds of state-sponsored torture or abuse – of the kind ingeniously designed to cause pain but without a telltale 'significant injury'" would be "beyond the pale of the Constitution." *Hudson*, 503 U.S. at 13-14 (Blackmun, *J.*, concurring).  In contrast, to demonstrate "an atypical and significant hardship," the restrictions of imprisonment -- *i.e.*, the alleged hardship -- must be "significant," given the surrounding circumstances.

harm; and "battery" is an act intended to cause harmful or offensive contact with another.  *Alteiri v. Colasso*, 168 Conn. 329, 334 & n.3 (1975). "To prevail on a claim for assault and battery, plaintiff must establish that a defendant applied force or violence to him and that the application of such force or violence was unlawful."  *Odom v. Matteo*, 772 F. Supp. 2d 377, 395 (D. Conn. 2011)  (quoting  *Williams v. Lopes*, 64 F.Supp.2d 37, 47 (D.Conn.1999)).  *See also Betancourt v. Slavin*, 676 F.Supp.2d 71, 80 (D.Conn. 2009).

In the case at bar, plaintiff alleges that one or more defendants touched him in an offensive manner by spraying him with a chemical agent and placing him in painfully tight restraints.  He thus attempts to state a common law claim for assault and battery.  *See, e.g, Nelson v. City of Stamford*, No. 3:09-cv-1690 (VLB), 2012 WL 233994, at *9 (D.Conn. Jan. 25, 2012) (denying dismissal of Connecticut common law assault and battery claims of excessive force by police officers on summary judgment).

However, applying the relevant Connecticut three-year statute of limitations for actions founded upon a tort, Conn. Gen. Stat. § 52-577, Alston's assault and battery claim is not timely. The assault and battery at issue allegedly occurred on April 5, 2012 and this action was not commenced until May of 2015, almost one month beyond the statutory deadline.[15]

Furthermore, there is no factual basis for tolling the relevant statute of limitations.  The United States Supreme Court has broadly held "that the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  However, the PLRA exhaustion requirement, and tolling of a *federal* civil rights claim during a prisoner's exhaustion, does not apply to state law claims. *See Nunez v.*

---

[15] *See* n. 3, *supra.*

*Goord,* 172 F.Supp.2d 417, 430 (S.D.N.Y. 2001) ("As [plaintiff's] cause of action alleging negligence does not invoke § 1983, or any other federal law, it is not subject to § 1997e(a)'s exhaustion requirement."); *see also Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 226 (6th Cir. 2011) (affirming summary judgment on inmate's federal claims for lack of exhaustion of remedies under PLRA, 42 U.S.C. § 1997e(a), but dismissing plaintiff's state law claims for lack of supplemental jurisdiction, acknowledging that plaintiff could pursue state law claims in state court without complying with PLRA exhaustion).

A federal court looks to the applicable state tolling laws to determine whether a state claim is timely. As stated *supra*, there is no PLRA exhaustion basis for tolling a state law claim. Moreover, when ordered to show cause why his complaint was untimely, plaintiff discussed only the PLRA and presented no facts, in either his complaint or his response to the Court's order, to support an alternative basis for tolling. For example, as described in the complaint, the alleged assault and battery upon plaintiff (spraying of chemicals and use of restraints) were evident, obviating "fraudulent concealment" as a basis for tolling, Conn. Gen. Stat. § 52-595. Furthermore, there can be no continuing course of tortious conduct where, as alleged by plaintiff, the incident on April 5, 2012 began and ended on that date or the next day. *Cf. Watts v. Chittenden*, 301 Conn. 575, 583 (2011) (recognizing that the statute of limitations for torts may be tolled in the proper circumstances, under either the continuous course of conduct doctrine or the continuing treatment doctrine). Absent any viable basis for tolling, plaintiff's assault and battery claim is time-barred.

### 2. <u>Intentional Infliction of Emotional Distress</u>

With respect to Alston's claim for intentional infliction of emotional distress, the four requisite elements under Connecticut common law are: (1) an actor intended to inflict emotional

distress or knew or should have known that emotional distress was a likely result of his conduct; (2) the conduct was extreme and outrageous; (3) the conduct caused plaintiff's distress; and (4) the plaintiff's emotional distress was severe. *Bell v. Bd. of Educ. of City of West Haven*, 55 Conn.App. 400, 409 (1999) (citations omitted). Liability for this tort "requires conduct exceeding all bounds usually tolerated by decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." *Id.* Construing the complaint liberally, plaintiff alleges that defendants acted in an intentional manner to cause him severe emotional distress when they sprayed his cell with a chemical agent and tightly shackled him.

However, regardless of plaintiff's substantive allegations, this state law claim is also time-barred. Conn. Gen. Stat. § 52–577 provides a three-year statute of limitations for an action founded on a tort, commencing from the "date of the act or omission complained of." The acts which gave rise to this claim all occurred on or about April 5, 2012 and plaintiff's lawsuit in this Court was commenced in May of 2015. The Connecticut Supreme Court has "clarified that in cases of intentional infliction of emotional distress, if no conduct has occurred within the three-year limitations period set forth in § 52–577, the plaintiff will be barred from recovering for the prior actions of intentional infliction of emotional distress." *Brady v. Bickford*, No. KNLCV116007541, 2015 WL 1727591, at *3 (Conn. Super. Ct. Mar. 13, 2015) (citing *Watts*, 301 Conn. at 596). In the case at bar, there is no PLRA exhaustion applicable to this state law claim and no factual basis to argue that conduct after April 2012 should toll Connecticut's three-year statute of limitations. In sum, plaintiff's state law claims must be dismissed as untimely.

### C. Immunity from Monetary Relief

Finally, with respect to the issue of whether any of plaintiff's claims might "seek[]

monetary relief from a defendant who is immune from such relief," 28 U.S.C. § 1915A(b)(2), there is no Eleventh Amendment bar to plaintiff's § 1983 claims brought against the state official defendants in their *individual* capacities.   *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir. 1993). *See also Scheuer v. Rhodes*, 416 U.S. 232, 238 (1974) (Eleventh Amendment does not bar award of damages to be paid from the official's personal funds). "[S]tate officials, sued in their individual capacities, are 'persons' within the meaning of § 1983." *Hafer v. Melo*, 502 U.S. 21, 31 (1991).[16]

## IV. ORDERS

In accordance with the foregoing analysis, the Court enters the following orders:

(1)     Plaintiff's Fourteenth Amendment claim for use of excessive force is **DISMISSED** as redundant because his excessive force claim arose *after* he was convicted, implicating the Eighth Amendment, as opposed to the Fourteenth Amendment, which protects pretrial detainees.

(2)     All due process claims alleging an "atypical and significant hardship in relation to the ordinary incidents of prison life" pursuant to *Sandin*, 515 U.S. at 484, are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1).

---

[16]   Plaintiff prays only for monetary damages in his Complaint.  Therefore, he may *not* sue the state official defendants in their *official* capacities. When a suit against a state official in his or her *official* capacity seeks *money damages*, the state is deemed to be the real party in interest because an award of damages would be paid from the state treasury. *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 48-49 (1994). Under such circumstances, a lawsuit is deemed to be against the State so that the State official is entitled to Eleventh Amendment immunity. *See, e.g., Minotti v. Lensink*, 798 F.2d 607, 609 (2d Cir. 1986).  *Cf. In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) (under the "well-established" exception to Eleventh Amendment immunity, set forth in *Ex parte Young*, 209 U.S. 123 (1908), "a plaintiff may sue a state official acting in his official capacity -- notwithstanding the Eleventh Amendment -- for prospective, injunctive relief from violations of federal law") (citations and internal quotation marks omitted).  In the case at bar, plaintiff seeks no prospective injunctive relief.

(3)     The state law claims for assault and battery and intentional infliction of emotional distress are **DISMISSED** as time-barred by Connecticut's three-year statute of limitations for actions founded upon a tort, Conn. Gen. Stat. § 52-577.

(4)     The case will proceed solely on the § 1983 federal claim against the state official defendants in their individual capacities for use of excessive force in violation of the Eighth Amendment.

(5)     The Clerk shall verify the current work address of each defendant with the Department of Correction Office of Legal Affairs, and mail a waiver of service of process request packet to each defendant at the confirmed address within **twenty-one (21) days** from the date of this Order.  The Clerk shall report to the Court on the status of that waiver request on the thirty-fifth (35th) day after mailing.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(6)     **The Clerk shall send a courtesy copy** of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(7)     The defendants shall file their response to the Complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, defendants shall admit or deny the allegations and respond to the cognizable claims recited in the Complaint.  They also may include any and all additional defenses permitted by the Federal Rules.

(8)     Discovery, pursuant to Federal Rules 26 through 37 of Civil Procedure, shall be completed within **seven months (210 days)** from the date of this Order. Discovery requests need not be filed with the Court.

(9)     All motions for summary judgment shall be filed within **eight months (240 days)** from the date of this Order.

(10)    Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion **within twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(11)    If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)(2) provides that he  MUST notify the court.  Failure to do so may result in the dismissal of the case.  The plaintiff must give notice of a new address even while incarcerated.  The plaintiff should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address.  If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address.  The plaintiff should also notify the defendants or the attorney for the defendants of his new address.

(12)    Service cannot be effected upon defendants Correctional Officers John Doe #1 and John Doe #2 without their full names and current work addresses.  The plaintiff is directed to file a notice containing this information within **thirty (30) days** from the date of this Order. Failure to file the notice within the time specified may result in the dismissal of all claims against defendants John Doe #1

23

and John Doe #2.

(13)   The plaintiff's motion for emergency relief [Doc. 8] and motion to expedite his

motion for emergency relief [Doc. 9], seeking issuance of this ruling, are both

**DENIED** as moot.

(14)   Plaintiff's motion for a courtesy copy of the Complaint [Doc. 10] is hereby

**GRANTED on a "one-time only" basis**.  The Clerk is directed to include a copy

of the Complaint with service of the copy of this Order.  Plaintiff is advised that

he must keep copies of all future pleadings he files in this action.  The Court will

not henceforth provide copies of pleadings plaintiff files in this action.

It is So ORDERED**.**

Dated:  New Haven, Connecticut
         November 17, 2015


*/s/Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge